Case number 19, 2492 Southern Iowa, Daniel Robbins et al versus City of Des Moines et al. Thank you. Good morning Mr. Dickey. We're ready when you are. Good morning and may it please the court. My name is Gary Dickey from Dickey, Campbell and Sahag Law Firm in Des Moines and together with Glenn Downey we represent Daniel Robbins who appears before this court asking you to reverse the district court's grant of summary judgment. In this case Mr. Robbins asserts three claims against individual law enforcement defendants in the City of Des Moines. First, he asserts a First Amendment retaliation claim. Second, he asserts a Fourth Amendment violation claim under 42 U.S.C. 1983. And third, he asserts a Monell claim for failure to train inadequate action by the City of Des Moines. In the court below the defendants asserted that they were entitled to qualified immunity and as this court knows that's a two-fold inquiry. First, is there a constitutional violation? And second, has that constitutional right that was violated been clearly established? In this case the district court decided summary judgment on the first prong. We submit that this ruling was incorrect in two respects. First, the district court failed to view the facts in the light most favorable to Mr. Robbins as is required at the summary judgment stage before the district court. Second, we assert that the court misapplied the law as to our constitutional claims. What I would like to do today is first address the claim that we believe provides us the strongest grounds for reversal which is our Fourth Amendment violation. As we pled and argued in our summary judgment resistance, we assert that the law enforcement defendants violated Mr. Robbins' Fourth Amendment right to be free from unreasonable searches and seizures in three ways. First, he was detained without reasonable suspicion. Second, he was detained without reasonable suspicion. And third, his cell phone and his camera and property were seized and remained held by the law enforcement defendants without probable cause. Now with respect to our Fourth Amendment claim, the two most the two strongest arguments that we have for reversal is the absence of probable cause. We submit that what the district court should have done is decide first, was Mr. Robbins arrested? Second, did the law enforcement defendants have probable cause? And third, was his right to be free from arrest without probable cause clearly established? Had the district court correctly addressed those issues and deferred and viewed the facts in the light most favorable to Mr. Robbins, he would have survived summary judgment. With respect to the violation, the record establishes that Mr. Robbins was walking along a sidewalk in broad daylight, a public sidewalk along a public street that was adjacent to the Des Moines police station. He had a camera that was visibly hanging from his neck. He was dressed in casual jeans and a collared short-sleeved shirt. He was not armed, and there's nothing about the way he was dressed or the way that he moved that would suggest he was armed. He was not violating any law. He was not making any furtive movements or acting suspiciously. He was not acting in a way that was threatening to anyone, either by words or by actions. He was not disrupting any police activities that were occurring on or near the grounds of the police station. He was simply on his way to the market district in Des Moines, which is a block south of the police station. As he was walking on the sidewalk, he saw several civilian cars parked along the street that were in an area that was clearly marked as a no parking area, and so he began taking pictures and video of the illegally parked cars, including images of a uniformed officer entering what appeared to be an illegally parked civilian vehicle. At that point, Detective Brad Youngblood, who is a defendant in this case, detained Robbins and asked him what he was doing, and when Robbins answered that he was taking pictures because it was perfectly legal for him to do so, the situation escalated, and the video is in the record. I would ask, I'm sure your honors have viewed the video, and what viewed in the light most favorable to Mr. Robbins, we believe a reasonable jury could conclude that anything less than full submission to Detective Youngblood's questions was the reason why the situation escalated. So with respect to our Fourth Amendment probable cause argument that we submit that there is a 1979 United States Supreme Court case in which two law enforcement officers observed an individual walk away down an alley in a high crime area, and so they detained him, and the United States Supreme Court ruled that those facts were not enough to constitute reasonable suspicion. The belief that he was... Did you say Brown v. Texas? Yes. The court held that the belief he was acting suspicious was not objectively reasonable and not supported by the objective evidence in the record, and that the fact that this was a high crime area standing alone is not a sufficient basis to suspect he was engaged in criminal conduct. So Brown stands for the clearly established premise in holding that in a detective's on less than reasonable suspicion violates the Fourth Amendment. If you compare this case to Brown, as we have done on page 40 of our brief, facts are even less convincing for the law enforcement defendants. Mr. Robbins was in broad daylight. There was nothing to suggest that he was engaged in any legal activity. There is no evidence in the record that this was a high crime area, although there is evidence that they had had crime before, and so it's our belief that at the summary judgment stage, the defendants haven't established sufficient evidence to meet their burden to show a lack of... I just don't think your argument is reality today. If Mr. Robbins, when saying he won't identify himself and he won't leave and he won't stop taking pictures that could be used by vandals or terrorists to disrupt and destroy a leased property and injure police officers. Now that's pretty suspicious in 2020. May not have been in 1979. Well, your honor, I point out two things. First, we believe that the law is clearly established that in the absence of reasonable suspicion that an individual has the constitutional right not to answer any questions at all and they're free to go on their way. That's the Florida v. Royer case. And what the record establishes from Detective Youngblood's own statements is that people take pictures outside of that building all of the time. And Mr. Robbins requested repeatedly to know from the officers what it was that he was doing that was raising their suspicion. And they just did not like his attitude and they didn't like his answers. At least a jury could reach that conclusion based on... And that's how Terry stops get extended all the time. Or requests on the street to talk by a police officer to talk to someone get turned into Terry stops because of their response and the attitude and the body language and everything else. And it's not clearly established that it's unconstitutional to react to responses. Well, again, we would submit that Brown v. Texas... reasonable suspicion to initiate a Terry stop. But with respect to your point that they use his answers against him to elevate it to probable cause, they don't even have probable cause. On the arrest, the district court didn't discuss the separate arrest that you say is a separate claim. Right. And I guess I haven't read the briefs to the district court, but usually district courts react to the issues as presented to them. Right. When we presented it, errors have been preserved. The district court... Well, when was the arrest and why... This case reminds me of the airport cases that we had when I first came on the bench. And someone on a tip or otherwise would be stopped at the baggage carousel and can I look in your bag? No. And I want to leave. And the answer was, well, you can leave, but your luggage stays. Sure. And so why isn't that basically what happened here? Because there was no tip. And unlike the case like Florida v. Royer... I missed the word. There was no tip to law enforcement that Mr. Robbins was engaged in anything... It was personal observation. Right. And all he's doing is taking photographs from a public sidewalk of images... If there was reasonable suspicion, let's say to detain the camera. And I'm not saying... It's a different issue, to me, a more troubling issue, what they did with the camera. But if there was suspicion to detain the camera, what more did they do that constitutes an actionable arrest? Your Honor, it's the other way around. Pulling his shirt up and searching him, surrounding him by five people, telling him he's not free to leave, and then telling him he is under arrest. Why is that anything more than a detention? Because they told him he's under arrest. And under Iowa law, when you arrest somebody, you tell them they're under arrest. He asked, am I under arrest? And they said, yes. And then they made him place his hands on the hood, and then they searched his property, and then they seized his property. Under those facts, he wasn't armed. Okay. So if you look at the factors that you identify whether or not he's arrested, a reasonable jury could conclude that. By the way, the city really doesn't argue that. The city argues that this was just a Terry stop and doesn't engage in any meaningful analysis. But I do want to shift to... I agree with that. That's why I was pausing over the distinction. Okay. Well, so I do want to shift to the issue you brought up, which is the seizure of the property. Even if this is a Terry stop, they have a full seizure of his property. And Mr. Robbins had a constitutional right not to have his property seized absent a warrant or probable cause or some exception to the warrant requirement. And in this case, there simply wasn't probable cause to believe that his camera was contraband or that it was evidence of a crime. They could never identify a crime. And even today, the defendants can't identify what crime he would have been committed. So without probable cause to seize the camera and the cell phone, we survive summary judgment on the Fourth Amendment claim. And I'll reserve the balance of my time. Can I ask you just factually, Mr. Dickey, how long were the phone and the camera held by police? Approximately four or five days. And were they ever examined the videos or photographs ever examined by technicians in the police department? No. Detective Youngblood indicated that he was going to seek a search warrant whenever he could get around to it and that he was working on a murder case and this would be a low priority and he would get to it when he got to it. And that never happened. And I sent a letter to the city demanding its return, which they did several days later before it was examined. The district court really didn't touch on that aspect of the case, did it? No. It was the holding of the phone and camera for that period of time. Correct. And those were claims brought in the complaint in the case? Yes. They were brought in the petition and asserted in our summary judgment papers. Thank you. Thank you, Mr. Dickey. Does Ms. Mackle, do I say that right? Your Honor, Ms. Mackle is just fine. Thank you. May it please the court. Yes, I'm Shelly Mackle and I am representing the three officers as named defendants and also the city of Des Moines. And I believe one of the most important principles that was articulated in the record was a statement made by Detective Bradley Youngblood when he stated that just because something is legal doesn't mean that it isn't suspicious. And to take that out of the double negative, legal actions, even constitutionally protected actions, can at times create reasonable suspicion of criminal activity. But Mr. Robbins has taken in the opposite position of that, that as long as he is looking at life through the lens of his camera, that nothing he's doing can be deemed suspicious. If I mean, so to take that out to it's, you know, to some other logical conclusions, if Mr. Dickey is... Counsel, I'm more concerned by the arrest and camera seizure issues, frankly, because I don't understand why the arrest issue didn't get more attention by the district court and in your appellee's brief. Well, I would say because I think it's very clear from case law that there wasn't an arrest. And I think the record is not clear that there was a statement that you are under arrest. There were about three people talking at one time. And Mr. Robbins asked the question. And I'm sorry. Well, don't we have to assume the facts as plaid? Well, no, actually, I think when there is a video and there's a United States Supreme Court case, it's not clear. You know, you can only use the video if it clearly establishes the fact. And at some point, somebody appear apparently or may have said the word arrest. And isn't that enough? And guys surrounded and you're already in the process of searching them. I mean, I'm having a hard time finding that's not an arrest. Well, I would say, Your Honor, that he was surrounded by people at the time when he said, am I free to go? And they said no. And they said, yeah, go. And he said, nope, I'm going to stay right here. So the fact that he's surrounded by six people, I don't think has the impact of creating an arrest when he was surrounded the same way when he was easily still within a Terry stop situation. Well, what's the reasonable suspicion that criminal activity is afoot here? Because how is this guy any different than an urban landscape photographer? Guys go out and I mean, I see him standing in front of the courthouse here. I see him standing in the alleys, taking pictures of people for graduations and just landscape photos. I mean, you know, they're all over the place. So and, you know, how is this guy any different? I mean, what's the suspicion of crimes afoot? Well, other than he's just a little bit prickly. Well, I would say that the difference between someone taking photographs of buildings is distinguished here because he is taking pictures of license plates. He is illegally parked cars, he says, illegally parked cars, but he never tells the officers that's what he's doing. He is just taking pictures of cars, not just the license plates, but the location. He is also taking pictures of employees movements to and from the building. And that's really where the crux of this is. The first person who reports this is a woman named Angie, who's a civilian employee. And she calls an officer over and says, that guy is taking pictures of me getting in and out of my car. And when she's called later, they say, why did you call us about that? And she said, you know, because it's weird, it's uncomfortable. And so the officer Youngblood is also witnessing him do this. He sees him filming police activities, he sees them, you know, him actually recording the movements of officers. And that's where it gets weird. Now, if you go back to the context of a Terry stop, for example, the Terry case in itself, again, you've got lawful activity. These are guys who are walking back and forth on a city street. They're looking into a storefront. Well, is that lawful activity? Sure. And it might even be considered First Amendment activity because they gather, they talk, they associate with one another. They're just walking down the street. But that officer saw that as So we also have Mr. Robbins here looking at cars, in cars, around cars in an area where it's articulated that there have been thefts and vandalism. And when he is asked that question, he could have dispelled this all by saying, it really bugs me that these cars are illegally parked. But he doesn't. He continues to evade questions. He provides false information. And so from moment to moment, that reasonable suspicion is growing. But I don't think the use of the word arrest creates an arrest. It's the context. It's how is it done, the means by which it is done, and the duration. That's what the case law says, not the words that are used. And so he's never handcuffed. He's never put in a car. They don't take him to that police station that's right there that they could use to question him. And so it is the least intrusive means. They pat him down on the outside of his clothing. They lift his shirt up just to pat down around his jeans. And so he is not in any way appearing to have been arrested. And then in terms of the duration, as I said earlier, he knew that he was free to go. He chose to stay. So his movements were at that point. This wasn't a Terry Frisk. There wasn't any reason, there wasn't any reasonable suspicion he was armed and dangerous, was there? Well, I don't know that that's the case. I mean, if the concern is that he's engaged in stalking behavior and what Detective Youngblood's concern was that he... I mean, there's testimony from the officers. They thought he, they frisked him under Terry only because they thought he was armed and dangerous? They frisked him to, well, I don't believe there's any specific testimony about the reasons that they frisked him. They patted his pockets down and felt for items when they would check to see... They weren't feeling for a handgun. I don't know that there's anything in the record that would suggest that. You know, Terry makes a strong distinction between the detention and a frisk. And they went beyond detention. They did. Beyond a encouraged conversation, they took him to a frisk. They did. They patted him down. And unless they had suspicion he was armed and dangerous as well as engaged in something criminal, they arrested him. Well, I believe that the fact that they suspected him of stalking behavior and ambush activity is what permitted the pat down. Ambush with a... What? Give me a federal appellate case that says a suspicion of ambush by camera permits a Terry frisk. Well, I don't think there is one and that would probably... I don't think so either. That would go to the second prong of whether or not it's a constitutionally established and well-established constitutional right at this point. I mean, if you are engaged in potentially that you can't pat someone down for that if you believe. And as many police officers know, ambush activity is on the rise. Ambush is just a pejorative. Well, it's an assassination. It's murder. And that's on the rise with police officers. It's happened in this community. It happened two years prior to this where an officer was shot to death. So, and after he was being monitored in exactly the same way, which is the testimony that our affidavit, he is the lead detective watching a guy who watches police movements. He photographs them. He monitors where they go, just like Mr. Robbins was doing. And then that police officer ended up being murdered. And so what we're saying, I guess, is we can stop and ask him something, but we have to wait till someone gets hurt before they can pat someone down. And I think in this I think that's where the pretense of this has to begin. He's not just a guy walking around. He's not a guy taking pictures of landscape. He is honing in on individuals' vehicles. And that's not something that you do see all the time. I do see people taking pictures of buildings and architecture. And I mean, but by his argument then, police officers wouldn't be allowed to do this activity. They wouldn't be allowed to. California takes pictures of cars to see if get their license plates so they can ticket them by mail. Right. And you're talking about law enforcement doing that or individuals? Yes. Well, I think law enforcement in California. Yeah. And I think law enforcement can do things that the individuals, when they're engaging in, it could still rise to the level of reasonable suspicion. In this context, in particular, I mean, Mr. Robbins' position would be if he was taking pictures of police officers moving to and from their homes, maybe going to church, maybe going to mosque, so long as he's on a public street, they can't do anything about that. They wouldn't be able to ask him questions and they wouldn't be able to pat him down, even though it's certainly in that circumstance that would be concerning. They can ask him questions. That's constitutionally clearly established. They can't pat him down. Not without more. And I would argue that that is not a clearly established right at this point. Well, I'm descended from cases that may be clearly established where I thought they had suspicion to pat down and all they had was suspicion to talk. And your honor, I would say that your comment previously about the world of 1979 and the world of today is very, very different. And so police officers, the heightened violence against police officers, the heightened attacks on police officers that have happened right here in beautiful Des Looking at the case law through that lens, because it is what the reasonable police officer would think. It's not a matter of what a juror would think. It is what a reasonable police officer with the facts they knew at that time would feel threatened. And under these circumstances, Bradley Youngblood, two other named officers indicated very clearly their first concern was stalking behavior, was that this guy was acting just like this other guy was who ended up shooting and killing two police officers. And so that is the crux of the question for us. I do want to address... Let's go to the camera. It seems to me, and I hark back to that airport luggage situation that I cited. And when the police in those cases say, well, you can go, but your luggage stays, that's only for, in my view, for two purposes. When all there is is some suspicion because of where the person was sitting on the plane or whatever that there are probably drugs in the luggage. You can only detain that luggage to get a dog to sniff it or to apply for a warrant. You can't detain it and just open it up and seize it, and you can't detain it and keep it forever. And it seems to me on this record, the officers have stepped way over that line. So, well, I would say I agree with you that it is that line of cases that it could be reasonable suspicion. It was a few days that... The person can't. Well, the person can only be held for the reasonable length of a ferry stop and then must be allowed to go. But if there's suspicion that extends to the luggage, then the luggage can be detained in order to apply for a warrant. Right. But Youngblood said, well, I'll get around to that. Meanwhile, you don't get your camera. That strikes me. I mean, that there's no clearly established right to do that. Is there? I would suggest to your honor that what what Officer Youngblood did was to investigate Mr. Robbins more before he decided to try to go deeper into his phone and avoided actually going further into it. He seized somebody's property. He seized it. And then he investigated Mr. Robbins. He learned that Mr. Robbins likes to post his grievances on YouTube. And his suspicions at that point were allayed as to the stalking behavior. He realized he is a person who is just interested in critiquing police and other individuals. And that allayed his suspicion. And so he gave the phone back because he didn't have it. He had only one reason to have that camera and phone in his hands. And that is, is if he could develop probable cause to believe there was evidence of a crime in there. And the only way he could get that way he could get that was to spend five days looking into Mr. Robbins himself. He had to get a warrant to look inside the phone and the camera. Otherwise, it's not his property and it's not the state's property. And it's not the city's property. It's Robbins' property. I agree with that. And your honor, I would just make the distinction that that's not the only way he wanted or the only way he could know what Mr. Robbins was doing. They asked Mr. Robbins repeatedly why he was taking pictures. And had he said, I get frustrated with police officers and where they park. This inquiry would have made it worse for him probably. Well, I don't think so. And I think they got that answer when they found the investigation and then there was no reason to intrude further on Mr. Robbins. I see my time is up. Does this matter days? Is that a reasonable length of time to possess someone's property? I mean, when you, when you seize property, you have to have some suspicion that it may be evidence of a crime and you seize it for the purposes of getting a warrant. And, you know, that's not a, we get to take days kind of proposition. Well, your honor, I felt the facts and you seek a warrant. I mean, and so why, how do you explain the length of the delay and the fact that the property was never returned until it was demanded back by counsel? Well, I think that I explained that by saying that Detective Youngblood was, he didn't say that I'll get to it whenever he said, I'm investigating a murder. I will get to it as soon as I can. And then he did his investigation and returned it. So it's not that he was exploiting the time. He actually said, I'm engaged in a fairly significant murder investigation right now, but I will get to this. And he did. If Robbins had been a professional photographer and this was his lifeblood, what would those five days have cost him? Thanks to Youngblood. Well, I'll get around to your problem. I've got my own. Well, and I think that's a matter of a question of damages, your honor. The question under that line of cases is not about what does it cost someone? It's about whether or not it impedes, one, on their possessory interest and two, on their ability to be mobile, their liberty interest. That line of cases requires both things. There's an acknowledgement that that's going to interfere with the possessory interest. Absolutely. But could he not move about? Was his liberty actually impeded? No. And if he has, you know, if he had damages or some kind of, you know, monetary kind of problem with it, or even just a convenience problem, that isn't a question as to the violation of his constitutional rights. I see my time has been up for a while. Are there other questions? Thank you. Appreciate the candor. It's not an easy case. Let's see. Mr. Dick, you've got a little bit of time for rebuttal. You're muted, sir. You're muted. Sorry about that. Your honor, may it please the court. In my brief time, I want to address four issues. First, I agree the statement that just because it's legal doesn't mean it's not suspicious is really important in this case because it illustrates that while the officers may have there's nothing in the record that it was objectively suspicious, which is really what the standard is. That is why the Brown versus Texas case is so important, because in that case, the officers harbored a belief that it was suspicious, but it was not supported by objective evidence in the record. Second, with respect to the issue of the arrest, the record from Detective Youngblood's video from 343 to 430 is really important. Mr. Robbins asked if he's free to go, and then he's threatened with arrest if he stays, and then specifically asked, do I have an arrest, and was told yes, and then specifically asked again, am I detained at this point, and told, yes, you are at this point. The third point would be I agree the world is different with ubiquitousness of cell phones. It was a cell phone that captured the video of George Floyd's life being drained from him, and they're all over the place, which walks them right into the Minnell claim that we assert, is they have failed to address the everyday use in the First Amendment rights of the use of cell phones in response to policing. And then lastly, with respect to the First Amendment retaliatory claim. No, you can't argue that. You didn't argue that initially. Okay. You can't sit in the weeds with that. Okay. Very well. Just one last point, then, on the question of seizing the property. Arizona v. Hicks, the 1987 case, makes it clear police cannot even move a stereo to look at serial. You're out of time, Mr. Hickey. Very well. Thank you, Your Honors. Thank you, counsel. The case has been brief, well briefed, and the argument's been helpful, and we'll take it under advisement.